**RGI BRANDS, LLC**
220 M.A.C. Ave
East Lansing, MI 48823, U.S.A.

**CONFIDENTIAL**
January 14, 2008

COGNAC BRISSET [AURIGE, S.A.R.L.]
Domaine de Puyrouyer
16130 SAINT PREUIL
France
Attn: Patrick Brisset, President and Owner

### Exclusive Distribution Agreement

This will confirm our agreement, effective as of January 1, 2008, whereby AURIGE S.A.R.L., a French company ("Supplier") and RGI Brands, LLC, a Michigan limited liability company ("Distributor") have agreed to formalize their exclusive distribution arrangements for the promotion, sale and distribution by Distributor of "Dragon Bleu" Vodka, "Orange Bleue", and all distilled spirits and liquors affiliated with the "Dragon Bleu" and "Orange Bleue" brands, including but not limited to such products as "Dragon Bleu Vodmuska" and "Dragon Bleu Vodpepper" ("Products"), which are supplied, distilled, manufactured, distributed, produced and/or otherwise available for distribution or sale in the United States of America, Canada, Mexico, Israel, and their respective territories and possessions ("Territory"), on the following terms and conditions:

1   **Distribution Rights.**  Supplier hereby appoints Distributor and Distributor hereby accepts appointment as the sole and exclusive distributor and sales representative for the Products in the Territory with the exclusive rights to market, sell, promote, distribute and/or service the Products to third parties located or headquartered in the Territory. Distributor shall also have the right to appoint sub distributors throughout the Territory to ensure adequate coverage. Supplier agrees to refrain from marketing, selling, promoting, distributing and servicing any other products, which directly compete with the Products and/or Distributor in the Territory. Distributor agrees to actively promote and solicit sales of the Products in the Territory.

2.  **Supplier Assistance.**

(a)  **Technical Assistance and Promotion.**  Supplier will make his best efforts to provide additional technical and promotional assistance and support as is reasonably required by Distributor, including product samples, English language technical information about Products, and other materials and information as may be reasonably required by Distributor from time to time.

(b)  **Trademarks and Labelling.**  Supplier hereby grants Distributor a royalty free license to promote and use the Supplier name and trademarks. Distributor may choose to use other names and trademarks in connection with the distribution of the Products so long as Supplier consents.

(c)  **Product Inventory & Delivery.**  Supplier shall maintain at its expense sufficient inventory to maintain reasonable delivery times in the Territory. Distributor shall make its best efforts to

Initials: _____
RGI Brands

Page 1 of 4

Initials: _____
AURIGE

EXHIBIT "A"

regularly inform Supplier of its expected supply needs. All Products shall be sold FOB Distributor's designated shipping point. Title and all risk of loss or damage to the Products shall remain with Supplier until the Products are delivered to said shipping point in France. Distributor shall assume responsibility for the Products at the time the Products are delivered to said shipping point.

3. **Price and Payment.**

(a) **Price.** The purchase price to Distributor for a 750ml bottle of "Dragon Bleu Vodka" shall be €3.70, as of December 7, 2007. This price does not include Supplier's profit, which will equal the greater of €1 or $1.50 USD. Therefore, the total price to Distributor for a 750ml bottle of "Dragon Bleu Vodka" shall equal the greater of €4.70 or the sum of €3.70 plus $1.50 USD. Profit payment terms may be changed from time to time as required by Supplier and may be modified by subsequent agreement. The price of such bottle will fluctuate, up or down, depending on the wholesale price of raw materials used to manufacture said Products. Supplier agrees to make good faith effort to acquire the appropriate quality of raw materials at the lowest price.

(b) **Payment.** Distributor shall remit payment to Supplier for the products as follows: (a) 50% of total payment amount shall be due at the time the order is placed; (b) 30% of total payment amount shall be due at the time the products are ready and Supplier ships the products; and (c) 20% of total payment amount shall be due 30 days after the products are delivered to Distributor's facility in the Territory. All payments will be by wire transfer to Supplier's designated account.

4. **Product Warranties, Claims and Liability.**

(a) **Product Warranty.** Supplier represents and warrants that (i) the Products shall fully comply at all times with all Specifications and United States regulations in effect from time to time and (ii) all Products are free of any defects in materials and workmanship, are merchantable and fit for the purpose intended, comply with all laws and regulations of the Territory and are free and clear of any and all security interests, intellectual property rights and claims of any kind. To ensure compliance with United States regulations at all times, Distributor shall inform Supplier of all relevant United States regulations and any relevant changes to such regulations.

(b) **Product Liability and Claims.** Supplier will replace at its cost all defective Products within thirty (30) days after Supplier confirming approval and acceptance of the claim. Supplier agrees to address all claims by Distributor and/or its customers fairly and promptly in good faith within thirty (30) days after receipt of such claim.

(c) **Patent, Trademark and Third Party Rights.** Supplier represents and warrants that it is the sole owner of all patents, trademarks and intellectual property rights required for Distributor to exercise its rights hereunder and that there are no third party claims and/or rights of any kind, which would prevent or substantially impede the sale and distribution of the Products in the Territory or Distributor's rights hereunder.

5. **Term and Termination.**

(a) **Term.** The initial term of this Agreement shall be seven (7) years from the date hereof and thereafter, shall automatically be renewed for additional periods of seven (7) years, unless terminated by either party for good cause by written notice given at least six (6) months prior to the end of either the initial term or any renewal period. Additionally, on January 1, 2011, the parties may mutually

agree to discontinue this Agreement only if both parties are substantially dissatisfied with their relationship.

(b) **Termination Rights.** This Agreement may be terminated by either party at any time upon written notice in the event that (i) the other party fails to remedy a material breach of this Agreement within ninety (90) days of receipt of written notice from the aggrieved party, (ii) the other party ceases doing business or discontinues sales of the Products, and/or (iii) insolvency, bankruptcy, assignments for the benefit of creditors or similar proceedings are instituted by or against the other party.

(c) **Termination Consequences.** Upon termination, all accrued obligations and monies owed shall be satisfied immediately and all property and confidential information belonging to the other party in the control or possession of a party shall be immediately returned. Paragraphs 5(c) (Termination Consequences), 6 (Confidentiality) and 10 (Governing Law; Disputes) shall survive the termination or expiration of this Agreement.

(d) **Potential Sale.** In the event of a potential sale of either party's interest in a brand covered by this agreement, there shall be a right of first refusal, allowing the other party thirty (30) days in which to purchase the first party's interest at the good faith offered selling price. If neither party exercises its 30-day option to purchase the other party's interest and a sale is completed, or if Supplier and Distributor sell both their interests in the brands covered by this agreement, then the proceeds from such sale shall be equally divided between Distributor and Supplier.

(e) **Patent and Trademark Rights in the Event of a Potential Sale.** In the event of a potential sale of either or both parties' interests in a brand covered by this agreement, Supplier will retain all rights and ownership to its trademarks.

6. **Confidentiality.** Neither party will disclose, use or exploit in any way, directly or indirectly, to any third party, any confidential or proprietary information of the other party, except as explicitly required by law or which is already in the public domain or was known by that party prior to disclosure as evidenced by written and dated records existing at the time.

7. **Documentation.** Distributor agrees to return customs documentation to Supplier within 60 days of clearance.

8. **Force Majeure.** Neither party shall be liable for its failure to perform hereunder directly related to any contingency beyond its reasonable or foreseeable control, provided the party affected gives prompt notice of the existence and end of such contingency.

9. **Assignment.** Neither party may assign, pledge or otherwise encumber this Agreement or any right, obligation and/or interest hereunder, without the prior written consent of the other party.

10. **Governing Law; Disputes.** This Agreement shall be governed and construed by the laws of the State of New York, without reference to its conflicts of law principles. Any disputes, which cannot otherwise be amicably resolved by the parties, shall be exclusively litigated in the applicable courts having jurisdiction located in the State of New York and each party hereby consents to service of process and personal jurisdiction in same. Any judgment of such court may be enforced in any other jurisdiction.

11. **Entire Agreement; Amendments.** This Agreement cancels and supersedes any and all prior agreements, arrangements and obligations of any kind (whether oral or written) between the parties

Initials: _____            Page 3 of 4            Initials: _____
    RGH Brands                                              AURIGE

This Agreement and any of the rights and obligations hereunder cannot be amended or altered in any way except in writing signed by authorized representatives of all the parties

In consideration of receipt of €85,000 from Distributor (as detailed in Supplemental Agreement dated January 14, 2008), the party signing below (Supplier) hereby agrees to the above terms and conditions.

If the foregoing confirms your understanding of our Agreement, please so indicate by signing in the space indicated below and returning to us five (5) original copies within seven (7) days of the date of this letter, failing which this letter shall expire and be of no further force and effect.

RGI BRANDS, LLC

By: _____
Title: President

AGREED & ACCEPTED:

COGNAC BRISSEL—AURIGE, S.A.R.L.

By: _____
Title: President/Owner