UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RGI BRANDS, LLC, | : | |
| | : | |
| Plaintiff/Counterclaim-Defendant, | : | Case No. 12 CV 1369 (BSJ)(AJP) |
| | : | |
| -vs- | : | |
| | : | ECF CASE |
| COGNAC BRISSET-AURIGE, S.A.R.L., | : | |
| | : | |
| Defendant/Counterclaim-Plaintiff. | : | JURY TRIAL DEMANDED |
| | : | |
| _____ | : | |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
## OF DEFENDANT COGNAC BRISSET-AURIGE, S.A.R.L.

Defendant COGNAC BRISSET-AURIGE, S.A.R.L. ("Aurige" or "Defendant"), by and through its undersigned counsel, for its Answer, Affirmative Defenses and Counterclaims to the Complaint of plaintiff RGI BRANDS, LLC (hereafter, "RGI" or "Plaintiff") alleges on knowledge as to its own acts and otherwise on information and belief as follows:

### The Parties

1.      Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 1 of the Complaint.

2.      Aurige denies the allegations contained in paragraph 2 except admits that it is a French Soiciété à responsibilité limitée and that its current place of business is Domaine de Puyrouyer 16130, Saint Preuil, France, and further states that footnote 1 contains legal conclusions for which no response is required.

**Jurisdiction and Venue**

3.      Paragraph 3 of the Complaint contains legal conclusions for which no response is required.

4.      Paragraph 4 of the Complaint contains legal conclusions for which no response is required.

5.      Aurige denies the allegations of paragraph 5 of the Complaint to the extent it purports to characterize the express terms of the Exclusive Agreement, and refers to the full text of that Agreement for its contents.

**Alleged Facts**

6.      Aurige denies the allegations of paragraph 6 of the Complaint.

7.      Aurige denies the allegations of paragraph 7 of the Complaint to the extent it purports to characterize the terms of the Exclusive Agreement, and refers to the full text of that Agreement for its contents.

8.      Aurige denies the allegations of paragraph 8 of the Complaint to the extent it purports to characterize the terms of the Exclusive Agreement, and refers to the full text of that Agreement for its contents.

9.      Aurige denies the allegations in paragraph 9 of the Complaint.

10.      Aurige denies the allegations of paragraph 10 of the Complaint to the extent it purports to characterize the express terms of the Exclusive Agreement, and refers to the full text of that Agreement for its contents.

11.     Aurige denies the allegations of paragraph 11 of the Complaint to the extent it purports to characterize the express terms of the Exclusive Agreement, and refers to the full text of that Agreement for its contents.

12.     Aurige denies the allegations of paragraph 12 of the Complaint.

13.     Aurige denies the allegations of paragraph 13 of the Complaint to the extent it purports to characterize the express terms of the Supplemental Agreement, and refers to the full text of that Agreement for its contents.

14.     Aurige denies the allegations of paragraph 14 of the Complaint.

15.     Aurige denies the allegations of paragraph 15 of the Complaint to the extent it purports to characterize the express terms of the Exclusive Agreement and the Supplemental Agreement, and refers to the full text of those Agreement for their contents.

16.     Aurige denies the allegations of paragraph 16 of the Complaint to the extent it purports to characterize the express terms of the Exclusive Agreement and the Supplemental Agreement, and refers to the full text of those Agreements for their contents.

17.     Aurige denies the allegations of paragraph 17 of the Complaint.

18.     Aurige denies the allegations of paragraph 18 of the Complaint to the extent it purports to characterize the express terms of the Exclusive Agreement, the Supplemental Agreement, and the letter dated November 21, 2011, and refers to the full text of those documents for their contents.

19.     Aurige denies the allegations of paragraph 19 of the Complaint.

20.     Aurige denies the allegations of paragraph 20 of the Complaint.

21.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 21 of the Complaint.

22.     Aurige denies the allegations of paragraph 22 of the Complaint.

23.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 23 of the Complaint.

24.     Aurige denies the allegations of paragraph 24 of the Complaint.

25.     Aurige denies the allegations of paragraph 25 of the Complaint, except admits that RGI returned products to Aurige.

26.     Aurige denies the allegations of paragraph 26 of the Complaint.

27.     Aurige denies the allegations of paragraph 27 of the Complaint.

28.     Aurige denies the allegations of paragraph 28 of the Complaint.

29.     Aurige denies the allegations of paragraph 29 of the Complaint.

30.     Aurige denies the allegations of paragraph 30 of the Complaint.

31.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31 of the Complaint.

32.     Aurige denies the allegations of paragraph 32 of the Complaint.

33.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of he allegations contained in paragraph 33 of the Complaint, except denies that Plaintiff pre-paid for the Futura Bottles.

34.     Aurige denies the allegations of paragraph 34 of the Complaint.

35.     Aurige denies the allegations of paragraph 35 of the Complaint.

36.     Aurige denies the allegations of paragraph 36 of the Complaint to the extent they contain legal conclusions for which no response is required, except admits that Aurige demanded certain payments from RGI before Aurige shipped Container 5 or Container 6, and further states that RGI agreed to pay said amounts.

37.     Aurige denies the allegations of paragraph 37 of the Complaint.

38.     Paragraph 38 of the Complaint contains legal conclusions for which no response is required.

39.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 39 of the Complaint.

40.     Paragraph 40 of the Complaint contains legal conclusions for which no response is required.

41.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 41 of the Complaint.

42.     Aurige denies the allegations of paragraph 42 of the Complaint.

43.     Aurige denies the allegations of paragraph 43 of the Complaint.

44.     Aurige denies the allegations of paragraph 44 of the Complaint.

45.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 45 of the Complaint.

46.     Aurige denies the allegations of paragraph 46 of the Complaint.

47.     Aurige denies the allegations of paragraph 47 of the Complaint.

48.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 48 of the Complaint.

49.     Aurige denies the allegations of paragraph 49 of the Complaint.

50.     Aurige denies the allegations of paragraph 50 of the Complaint.

51.     Paragraph 51 of the Complaint contains legal conclusions for which no response is required.

52.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 52 of the Complaint.

53.     Aurige denies the allegations of paragraph 53 of the Complaint.

54.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 54 of the Complaint.

55.     Aurige denies the allegations of paragraph 55 of the Complaint.

56.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 56 of the Complaint.

57.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 57 of the Complaint.

58.     Aurige denies the allegations of paragraph 58 of the Complaint, except admits that on April 12, 2011 RGI sent an e-mail to Aurige and refers to the full text of that e-mail for its contents.

59.     Aurige denies the allegations of paragraph 59 of the Complaint.

60.     Paragraph 60 of the Complaint contains legal conclusions for which no response is required.

61.     Aurige denies the allegations of paragraph 61 of the Complaint.

62.     Aurige denies the allegations of paragraph 62 of the Complaint.

63.     Aurige denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 63 of the Complaint.

64.     Aurige denies the allegations of paragraph 64 of the Complaint.

65.     Aurige denies the allegations of paragraph 65 of the Complaint.

66.     Aurige denies the allegations of paragraph 66 of the Complaint.

67.    Aurige denies the allegations of paragraph 67 of the Complaint.

68.    Aurige denies the allegations of paragraph 68 of the Complaint.

69.    Aurige denies the allegations of paragraph 69 of the Complaint.

70.    Aurige denies the allegations of paragraph 70 of the Complaint.

71.    Aurige denies the allegations of paragraph 71 of the Complaint, except admits that on or about November 21, 2011, it sent a letter to RGI as shown in Exhibit C, and refers to the full text of that letter for its contents.

72.    Aurige denies the allegations of paragraph 72 of the Complaint, and refers to the full text of the Exclusive Agreement for its contents.

73.    Aurige denies the allegations of paragraph 73 of the Complaint, and refers to the full text of the Exclusive Agreement for its contents.

74.    Aurige denies the allegations of paragraph 74 of the Complaint.

## First Cause of Action: Breach of Contract

75.    Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

76.    Aurige denies the allegations of paragraph 76 of the Complaint.

77.    Aurige denies the allegations of paragraph 77 of the Complaint.

78.    Aurige denies the allegations of Paragraph 78 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

**Second Cause of Action: Anticipatory Breach**

79.     Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

80.     Aurige denies the allegations of paragraph 80 of the Complaint.

81.     Aurige denies the allegations of paragraph 81 of the Complaint.

82.     Aurige denies the allegations of Paragraph 82 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

**Third Cause of Action: Loss of Sales**

83.     Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

84.     Aurige denies the allegations of paragraph 84 of the Complaint.

85.     Aurige denies the allegations of Paragraph 85 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

**Fourth Cause of Action:  Damage to Business Reputation**

86.     Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

87.     Aurige denies the allegations of paragraph 87 of the Complaint.

88.     Aurige denies the allegations of paragraph 88 of the Complaint.

89.     Aurige denies the allegations of paragraph 89 of the Complaint.

90.     Aurige denies the allegations of Paragraph 90 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

**Fifth Cause of Action:  Fraud**

91.     Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

92.     Aurige denies the allegations of paragraph 92 of the Complaint.

93.     Aurige denies the allegations of Paragraph 93 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

**Sixth Cause of Action: Demand for Accounting**

94.     Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

95.     Aurige denies the allegations of paragraph 95 of the Complaint.

96.     Aurige denies the allegations of Paragraph 96 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

**Seventh Cause of Action:  Permanent Injunction**

97.     Aurige repeats and realleges its responses to each and every allegation set forth in Paragraphs 1 through 74 of the Complaint as if fully set forth herein.

98.     Aurige denies the allegations of paragraph 98 of the Complaint.

99.     Aurige denies the allegations of paragraph 99 of the Complaint.

100.    Aurige denies the allegations of Paragraph 100 of the Complaint and further denies that Plaintiff is entitled to any relief whatsoever in law or equity based on the allegations in the Complaint.

<u>**Defenses**</u>

Assertion by Defendant Aurige of any affirmative defense(s) or any other defense(s) shall not be deemed to be a concession or admission that Aurige bears the burden of proof with respect to any of them.

<u>First Defense</u>

The Complaint, and each count thereof, fails to state a claim upon which relief, either equitable or legal, can be granted.

<u>Second Defense</u>

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

<u>Third Defense</u>

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

<u>Fourth Defense</u>

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

<u>Fifth Defense</u>

Plaintiff's claims are barred in whole or in part by the doctrine of acquiescence.

<u>Sixth Defense</u>

Plaintiff has failed to plead fraud with particularity, as required by Fed. R. Civ. P. 9(b).

<u>Seventh Defense</u>

Plaintiff's purported injury was not caused by Defendant's conduct.

<u>Eighth Defense</u>

Plaintiff has failed to mitigate its purported damages.

<u>Ninth Defense</u>

Some or all of Plaintiff's claims are barred by the applicable statute of limitations.

## **<u>Reservation of Rights</u>**

Aurige hereby gives notice that it intends to rely upon any other defense or defenses that may become available or appear during the pre-trial proceedings, based upon evidence developed in discovery or otherwise, and hereby reserves the right to amend their answer to assert any such defenses.

WHEREFORE, Defendant Aurige respectfully requests a judgment in favor of Aurige and against Plaintiff RGI:

A.  Dismissing each and every count alleged in Plaintiff's Complaint;

B.  Denying all relief sought by RGI;

C.  Awarding to Aurige its costs, expenses and attorney's fees; and

D.  Granting such other and further relief as this Court deems just and proper.

*(Remainder of page intentionally left blank)*

11

## COUNTERCLAIMS OF AURIGE AGAINST RGI

COGNAC BRISSET-AURIGE S.A.R.L.  (hereafter referred to as "Aurige" or "Counterclaim-Plaintiff"), by and through its undersigned counsel, alleges on knowledge as to its own acts and otherwise on information and belief the following counterclaims against RGI BRANDS, LLC (hereafter referred to as "RGI" or "Counterclaim-Defendant").

### Nature of Counterclaims

1.      Aurige, a French-based manufacturer of, among other brands, DRAGON BLEU brand vodkas and cocktails, brings these counterclaims to cancel the US  trademark registration for (i) DRAGON BLEU, US Registration No. 3663356 for alcoholic beverages, namely distilled spirits, cordials, and liqueurs in International Class 33 (the "DRAGON BLEU Word Mark"), and (ii)  Dragon Bleu Design Mark, US Registration No. 3663357 for  alcoholic beverages, namely distilled spirits, cordials, and liqueurs in International Class 33 (the "DRAGON BLEU Design Mark," collectively, the "DRAGON BLEU Marks" or "Marks"), which were fraudulently obtained by RGI -- at the time of registration -- Aurige's exclusive US distributor for DRAGON BLEU vodka.  RGI obtained the registration without authorization from Aurige and contrary to the limited distribution rights granted in Aurige's Exclusive Distribution Agreement dated January 14, 2008, which made clear that Aurige was the owner of all trademarks associated with the DRAGON BLEU brand.  Because RGI was not the owner of the applied-for mark at the time of application for registration, and has never been the owner of the Marks, its registration is void *ab initio*. Aurige believes it is being damaged and will continue to be damaged by the registration of the Marks. Accordingly, the registrations in the name of RGI should be cancelled, and the registration should be transferred to Aurige, the rightful owner of the Marks.

**Jurisdiction and Venue**

2.      This Court has original jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§1331 and 1338.

3.      This Court has personal jurisdiction over RGI because it has submitted itself to the personal jurisdiction of this Court by commencing this civil action and because, upon information and belief, RGI does business in the State of New York and in this District.

4.      Venue is proper in this district under 28 U.S.C. §1391 (b) – (d) because RGI has consented to venue in this District both by the terms of the Exclusive Agreement and by virtue of commencing this civil action, and because Counterclaim-Defendant may be found in this District.

**The Parties**

5.      Counterclaim-Plaintiff Aurige is a French Soiciété à responsibilité limitée (S.a.r.l.) with its principal place of business located at Domaine de Puyrouyer 16130, Saint Preuil, France,

6.      Counterclaim-Defendant RGI is a limited liability company organized under the laws of the State of Michigan, with principal place of business at 220 M.A.C. Avenue, Suite 308, East Lansing, Michigan.

**Facts Applicable to All Causes of Action**

**A.      Aurige and its DRAGON BLEU Marks**

7.      Aurige is a successful, popular and well known manufacturer of cognac, vodka and other liqueurs.

8.      Aurige sold its first DRAGON BLEU brand of vodkas in France on or about

2005, In 2008, Aurige expanded sales into the United States.  Aurige currently plans to expand its sales into four additional European countries, one additional country in Asia, and one additional country in Africa  by the beginning of 2013.

9.      DRAGON BLEU branded vodka is manufactured, bottled and labeled in France by or on behalf of Aurige.

10.      Aurige has continuously used its DRAGON BLEU Marks in connection with its vodka products since 2005, and has continuously used the marks in the US since 2008.

11.      Aurige's DRAGON BLEU line of vodkas has enjoyed commercial success worldwide since its inception.  Since 2008, annual sales of DRAGON BLEU branded vodkas in the US and France combined have averaged between 100,000 € and 150,000 €.  Aurige also spends over 20,000 € per year in advertising and/or promotional expenditures in France. Advertising and promotional expenditures in the United States are paid by RGI, Aurige's exclusive US distributor.  Upon information and belief, RGI has incurred thousands of dollars in advertising and promotional expenditures on behalf of DRAGON BLEU vodka products in the United States, in an amount to be determined through discovery.

12.       In addition, Aurige's DRAGON BLEU vodkas have won awards and critical acclaim in its industry.  Aurige's DRAGON BLEU Pure Vodka won the silver medal at the International Wine and Spirit Competition in London in 2007 and 2009, and the silver medal at the Wine and Spirit Competition in San Francisco in 2007 and 2008.  Aurige's DRAGON BLEU Penja Pepper Vodka won the silver medal for "Best in Class" at the International Wine and Spirit Competition in London in both 2008 and 2009.  Aurige's DRAGON BLEU White Ginger Vodka in 2010 won the gold medal for "Best in Class" at the International Wine and Spirit Competition in London, and the silver medal at the Spirit International Prestige competition in San Diego.

Aurige's DRAGON BLEU Rose Blossom Vodka in 2010 won the platinum medal at the Spirit International Prestige competition in San Diego, and the bronze medal for "Best in Class" at the International Wine and Spirit Competition in London.

13.     As a result of the distinctive nature, and thus inherent strength, of the DRAGON BLEU Marks as applied to Aurige's line of vodkas, widespread advertising, public renown, publicity, promotion and distribution of Aurige's products, the DRAGON BLEU Marks have become well known throughout the US and the world.

14.     Aurige owns the following valid and subsisting trademark registrations for the DRAGON BLEU word mark and the Dragon Bleu Design outside the United States:

| Trademark | Country | International Classes | Registration Number |
|---|---|---|---|
| DRAGON BLEU | France | 30, 32, 33 | 023171255 |
| DRAGON BLEU | EU | 30, 32, 33 | 1041097 (pending) |
| DRAGON BLEU | Morocco | 32, 33 | 1041097 |
| DRAGON BLEU | International | 32,33 | 1041097 |
| Dragon Bleu Design (color) | France | 30, 32,33 | 083599767 |
| Dragon Bleu Design (color) | France | 32, 33 | 053381465 |
| Dragon Bleu Design (black and white) | France | 32, 33, 43 | 103749529 |
| Dragon Bleu Design (black and white) | EU | 32, 33, 43 | 1065195 |
| Dragon Bleu Design (black and white) | Morocco | 32, 33, 43 | 1065195 |
| Dragon Bleu Design (black and white) | International | 32, 33, 43 | 1065195 |

### B.   RGI Unlawfully Registers the DRAGON BLEU Marks In the United States.

15.   On or about January 14, 2008, Aurige and RGI entered into an exclusive distribution agreement (the "Exclusive Agreement"), in which RGI became Aurige's exclusive distributor of DRAGON BLEU products for the United States, Canada, Mexico and Israel (the "Territory").

16.   The Exclusive Agreement sets forth the parties' intention and understanding that Aurige owns all right, title and interest in and to the DRAGON BLEU Marks, and that RGI would be granted only a royalty-free license to use the DRAGON BLEU Marks.  For example:

A.   Section 2(b) of the Exclusive Agreement states that "Supplier [Aurige] hereby grants Distributor [RGI] a royalty free *license* to promote and use the Supplier name and trademarks." (emphasis added);

B.   In Section 4(c) of the Exclusive Agreement, Aurige represents and warrants that "it is the *sole owner* of all patents, trademarks, and intellectual property rights required for Distributor to exercise its rights hereunder." (emphasis added); and

C.   Section 5(e) of the Exclusive Agreement confirms that "in the event of a potential sale of either or both parties' interests in a brand covered by this agreement, Supplier [Aurige] will *retain* all rights and ownership to its trademarks."  (emphasis added).

17.   Subsequent to entry into the Exclusive Agreement, RGI began to distribute DRAGON BLEU branded products in the Territory.  Aurige provided RGI with finished, bottled product for distribution.

18.     On or about January 14, 2008, Aurige and RGI entered into a Supplemental Agreement which, among other things, confirmed that all rights, arrangements, terms, conditions and obligations under the Exclusive Agreement – including trademark ownership by Aurige -- would remain in effect.

19.     Notwithstanding the terms of the Exclusive Agreement and the Supplemental Agreement, and without Aurige's prior knowledge or authorization, RGI on or about January 23, 2009 filed with the US Patent and Trademark Office applications to register both the DRAGON BLEU word mark and the DRAGON BLEU design mark in international class 33 for "alcoholic beverages, named distilled spirits, cordials and liqueurs."  At the time of applications, RGI was not the owner of the Marks.  Nevertheless, RGI represented that it, and not Aurige, was the owner of the Marks for which RGI sought registration.  The Patent and Trademark Office issued registrations for the DRAGON BLEU Word Mark and the DRAGON BLEU Design Mark in the name of RGI on May 19, 2009.

20.     Since finding out about RGI's application for, and registration of, the DRAGON BLEU Word Mark and the DRAGON BLEU Design Mark, Aurige has on several occasions requested that RGI assign its rights in those marks to Aurige.

21.     On or about May 3, 2010, Aurige filed trademark application number 79/083431 to register DRAGON BLEU as a trademark in its own name in International Class 33 for alcoholic beverages other than beer, and in International Class 32 for fruit juices and fruit-based beverages (the "Aurige Application").

22.      On or about August 19, 2010, the trademark office issued to counsel for Aurige a provisional full refusal of the Aurige Application on the grounds of likelihood of confusion with RGI's two registered trademarks for DRAGON BLEU.

17

23.     On or about September 27, 2010, Counsel for Aurige sent a letter to counsel for RGI requesting that RGI assign its registration in the DRAGON BLEU Marks to Aurige.   To date, however, RGI has refused to do so.

24.     On or about March 5 and 6, 2011, representatives of Aurige and RGI met in Paris, France to discuss, among other issues, ownership of the DRAGON BLEU Marks and their registrations.  At that meeting, an agreement in principle was reached between the parties that RGI would transfer ownership of the registrations back to Aurige.  RGI, however, never did so.

25.     Unable to obtain an assignment of the registrations for its own trademarks from RGI, Aurige was forced to abandon its US trademark application for DRAGON BLEU.  The Trademark Office issued a notice of abandonment with respect to Aurige's application to register DRAGON BLEU on October 3, 2011.

## Count I:

### Cancellation Based on Non-Ownership of DRAGON BLEU Word Mark at Time Application was Filed: 15 U.S.C. §1064(1)

26.     Aurige repeats and realleges the allegations set forth in paragraphs 1 through 25 of the Counterclaims as if fully set forth herein.

27.     Aurige is the owner of the DRAGON BLEU Word Mark, and was the exclusive owner of the DRAGON BLEU Word Mark at the time RGI applied to register it.

28.     RGI at no time obtained ownership rights to the DRAGON BLEU Word Mark nor obtained any right or authorization from Aurige to register said mark on its or Aurige's behalf.

29.     Notwithstanding that RGI knew that it was merely a licensee, and that it did not have any authorization from Aurige to do so, RGI applied for and obtained a registration for the

DRAGON BLEU Word Mark under the false premise that it owned said mark when in fact it did not.

30.     Had the Trademark Examiner known the truth that RGI was not the owner, but merely a licensee of the trademark and a distributor of Aurige's product, the Examiner would have denied RGI's application.

31.     Because RGI did not have the right to register the DRAGON BLEU Word Mark, its registration is void *ab initio*.

32.     RGI's misconduct as set forth above has prevented Aurige from obtaining a trademark registration for the DRAGON BLEU word mark, which it rightfully should own. Moreover, RGI's misconduct has caused and, if not remedied, will continue to cause harm to Aurige's ability to operate its business and control its trademarks, and the goodwill associated therewith.

### Count II:

### Cancellation Based on Non-Ownership of DRAGON BLEU Design Mark at the Time Application Was Filed:  15 U.S.C. §1064(1)

33.     Aurige repeats and realleges the allegations set forth in paragraphs 1 through 25 of the Counterclaims as if fully set forth herein.

34.     Aurige is the owner of the DRAGON BLEU Design Mark, and was the exclusive owner of the DRAGON BLEU Design Mark at the time RGI applied to register it.

35.     RGI at no time obtained ownership rights to the DRAGON BLEU Design Mark nor obtained any right or authorization from Aurige to register said mark on its or Aurige's behalf.

36.     Notwithstanding that RGI knew that it was merely a licensee, and that it did not have any authorization from Aurige to do so, RGI applied for and obtained a registration for the

DRAGON BLEU Design Mark under the false premise that it owned said mark when in fact it did not.

37.     Had the Trademark Examiner known the truth that RGI was not the owner, but merely a licensee, of the DRAGON BLEU Design Mark and a distributor of Aurige's product, the Examiner would have denied RGI's application.

38.     Because RGI did not have the right to register the DRAGON BLEU Design Mark, its registration is void *ab initio*.

39.     RGI's misconduct as set forth above has prevented Aurige from obtaining a trademark registration for the DRAGON BLEU design mark, which it rightfully should own. Moreover, RGI's misconduct has caused and, if not remedied, will continue to cause harm to Aurige's ability to operate its business and control its trademarks, and the goodwill associated therewith.

## Count III:

## Breach of Contract

40.     Aurige repeats and realleges the allegations set forth in paragraphs 1 through 25 of the Counterclaims as if fully set forth herein.

41.     By executing the Exclusive Agreement, RGI became obligated to "actively promote and solicit sales of the Products in the Territory."  Exclusive Agreement ¶ 1.

42.     The Territory is defined as the United States, Canada, Mexico, and Israel.

43.     RGI failed to actively solicit sales of the Products in the Territory, including Canada, Mexico, and Israel.

44.     By failing to actively solicit sales of the Products in the Territory, including Canada, Mexico, and Israel, RGI breached the Exclusive Agreement.

45.     Aurige has been damaged by RGI's breach of the Exclusive Agreement in an amount to be determined at trial, but not less than the jurisdictional amount of this Court.

## Count IV:
## Breach of UCC Article 2

46.     Aurige repeats and realleges the allegations set forth in paragraphs 1 through 25 of the Counterclaims as if fully set forth herein.

47.     Under the Exclusive Agreement, RGI was appointed as the sole and exclusive distributor for the Products in the Territory.  Exclusive Agreement ¶ 1.

48.     The Exclusive Agreement is controlled by New York law.

49.     As the exclusive distributer of the Products, RGI was obligated to use its best efforts to promote the sale of the Products.  N.Y. UCC § 2-306.

50.     RGI failed to use its best efforts to promote the sale of the Products, including, for example, the failure to prepare or execute a national strategy for the United States.  RGI did not do anything to promote the sale of the products in Canada, Mexico, or Israel.

51.     By failing to use its best efforts to promote the sale of the Products, RGI breached it obligations under article 2 of the New York Uniform Commercial Code.

52.     Aurige has been damaged by RGI's breach of its obligations under the New York Uniform Commercial Code in an amount to be determined at trial, but not less than the jurisdictional amount of this Court.

WHEREFORE, Aurige respectfully requests a judgment in favor of Counterclaim-Plaintiff Aurige and against Counterclaim-Defendant RGI:

A.      Ordering pursuant to 15 U.S.C. § 1068 the cancellation of RGI's US trademark registration nos. 3663356  and 366357 for the DRAGON BLEU Word Mark and the DRAGON BLEU Design Mark, and/or the assignment of said registrations to Aurige;

B.      Enjoining Counterclaim-Defendant from enforcing any alleged rights either under federal or state law in and to its trademark registrations for the DRAGON BLEU Word Mark and the DRAGON BLEU Design Mark, or the name DRAGON BLEU and the DRAGON BLEU logo;

C.      Entering judgment in favor of Aurige and against RGI on each and every of Aurige's counterclaims;

D.       Awarding Aurige money damages, including interest, on its counter-claims;

E.      Awarding Aurige its costs, expenses and attorney's fees in connection with these counterclaims; and

F.      Awarding such other and further relief as the Court deems just and proper.


Dated:  New York, New York                    Respectfully submitted,
             July 30, 2012

                                                              SULLIVAN & WORCESTER LLP


                                                              /s/ George O. Richardson, III
                                                              George O. Richardson, III
                                                              Mitchell C. Stein
                                                              1633 Broadway, 32nd Floor
                                                              New York, New York 10019
                                                              Telephone: (212) 660-3000

                                                              *Counsel for Defendant/Counterclaim-
                                                              Plaintiff Cognac Brisset-Aurige S.a.r.l.*