UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
RGI BRANDS LLC,                                  :
                Plaintiff,             :
:       12 Civ. 01369 (LGS)
    -against-                                       :
:                ORDER
COGNAC BRISSET-AURIGE, S.A.R.L.,   :
               Defendant.            :
:
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff, RGI Brands LLC ("RGI"), brought this action against Defendant Cognac Brisset-Aurige, S.A.R.L. ("CBA") seeking damages for breach of the parties' distribution agreement. (Dkt. No. 1). CBA counterclaimed that RGI unlawfully registered and used CBA's trademarks in the United States. (Dkt. No. 14). Familiarity with the facts of the case is presumed.

      On January 29, 2013, Magistrate Judge Andrew J. Peck, to whom this matter was referred, granted the motion to withdraw filed by CBA's counsel and warned that a corporation may not appear without counsel. (Dkt. No. 27, "January 29 Order"). On February 20, 2013, RGI filed a Motion for Default Judgment ("Motion") based on CBA's failure to obtain counsel and filed inquest papers. (Dkt. Nos. 32-35). On March 4, 2013, Judge Peck issued an additional warning that CBA may not appear except through counsel. (Dkt. No. 38). CBA failed to obtain counsel and did not file a response to the Motion.

      On April 18, 2013, Judge Peck issued a Report and Recommendation ("Report") recommending that (1) judgment be entered against CBA on default; (2) CBA's counterclaims be dismissed with prejudice; and (3) RGI be awarded $57,940 in breach of contract damages, $6,000

1

in pre-judgment interest through the date of the Report (April 18, 2013) plus $14.287 per day until judgment is entered, together with post-judgment interest pursuant to 28 U.S.C. § 1961, and $1,216 in costs. (Dkt. No. 40). RGI timely submitted objections to the Report on June 3, 2013. (Dkt. No. 42, "Objections"). CBA did not file objections and did not respond to RGI's Objections. On April 26, 2013, this case was transferred to this Court.

Having conducted a de novo review of the portions of the Report to which RGI objects, and having further reviewed the entirety of the Report, the Court adopts Judge Peck's Report in its entirety. Plaintiff's Motion for Default Judgment is granted as modified herein, and damages are awarded in the amount of $57,940 plus interest and costs.

## I. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court must make a de novo determination of those portions of the report to which timely objections are made. *Id.* When no objections are made, the Court may adopt the report if there is no clear error on the face of the record. *See DiPilato v. 7–Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). A decision is "clearly erroneous" when the Court, upon review of the entire record, is "left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (internal quotation marks omitted).

To invoke de novo review of the magistrate judge's recommendations, a party's objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (internal quotation

marks omitted). De novo review of a magistrate judge's report does not require the Court to conduct a de novo hearing on the underlying issues. *United States v. Raddatz*, 447 U.S. 667, 676 (1980). Rather, Congress intended "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *Id.*

**B. Damages**

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (internal quotation marks omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* Damages may not be awarded based solely on a plaintiff's statement as to the amount of damages; rather, there must be a basis upon which the court may determine the amount of damages with "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (noting that the court "should take the necessary steps to establish damages with reasonable certainty"). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). While Rule 55(b)(2) provides that a court may hold a hearing to determine the amount of damages to be awarded on a default, the decision to hold a

hearing is within the discretion of the district court. *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Damages for breach of contract are determined by calculating "the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (internal quotation marks omitted). Alternatively, the court may allow a plaintiff to recover "expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the contract." *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992) (internal quotation marks omitted).

"To recover lost profits damages for breach of contract under New York law, a plaintiff must make three showings: 1) the damages were caused by the breach; 2) the damages are provable with reasonable certainty; and 3) the damages were within the contemplation of the parties at the time of contract." *Atias v. Sedrish*, 133 F. App'x 759, 760 (2d Cir. 2005) (citing *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404, 624 N.E.2d 1007 (1993)).

## II. DISCUSSION

Neither party has objected to Judge Peck's recommendation that default judgment be entered against CBA and that CBA's counterclaims be dismissed with prejudice. RGI objects to the Report only with respect to the amount of damages to be awarded. In the Motion, RGI seeks $944,937.03 in total damages. In the Report, Judge Peck recommended that RGI be awarded $57,941.86, consisting of $20,161.87 of damages related to Container 1 and $37,779.99 of damages related to Container 6. Judge Peck also recommended that RGI be awarded interest and costs but no attorneys' fees.

hearing is within the discretion of the district court. *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Damages for breach of contract are determined by calculating "the amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995) (internal quotation marks omitted). Alternatively, the court may allow a plaintiff to recover "expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the contract." *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992) (internal quotation marks omitted).

"To recover lost profits damages for breach of contract under New York law, a plaintiff must make three showings: 1) the damages were caused by the breach; 2) the damages are provable with reasonable certainty; and 3) the damages were within the contemplation of the parties at the time of contract." *Atias v. Sedrish*, 133 F. App'x 759, 760 (2d Cir. 2005) (citing *Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 404, 624 N.E.2d 1007 (1993)).

## II. DISCUSSION

Neither party has objected to Judge Peck's recommendation that default judgment be entered against CBA and that CBA's counterclaims be dismissed with prejudice. RGI objects to the Report only with respect to the amount of damages to be awarded. In the Motion, RGI seeks $944,937.03 in total damages. In the Report, Judge Peck recommended that RGI be awarded $57,941.86, consisting of $20,161.87 of damages related to Container 1 and $37,779.99 of damages related to Container 6. Judge Peck also recommended that RGI be awarded interest and costs but no attorneys' fees.

In the Objections, RGI seeks reduced total damages in the amount of at least $558,664.46, in addition to treble damages, attorneys' fees and costs. RGI specifically objects to Judge Peck's Report only with respect to the amount of damages related to Container 1, Container 5, the balance of advanced payments, lost profits, promotional expenses and overcharges for the purchase of raw materials. The Court considers each of RGI's objections in turn.

**A. Damages**

   **1. Damages Related to Container 1**

In the Motion, RGI seeks $29,177 in damages for the four pallets of duty-paid defective products received in Container 1 that CBA never repaired or replaced and the warehousing expenses associated with storing those defective products. Judge Peck concluded that RGI's evidentiary proffer established with reasonable certainty that RGI suffered $20,161 in damages for the duty-paid defective products in Container 1, representing the value of four pallets of products, or 2,880 750 milliliter bottles. (Report at 20). Judge Peck concluded that RGI was not entitled to damages for warehousing costs because it failed to submit evidence of those expenses. (Report at 17-20).

In its Objections, RGI seeks the reduced amount of $28,577.07 in damages related to the duty-paid defective products from Container 1, including (a) $20,161 for the value of the duty-paid defective products, as recommended by Judge Peck; (b) $6,163.20 for the duty (excise tax) paid on those products; and (c) $2,232 for the cost of warehousing the products. RGI also seeks, for the first time, damages for hang tags and shipping costs for the duty-paid defective products from Container 1.

First, RGI agrees with Judge Peck that it is entitled to $20,161 for the value of the duty-paid defective products in Container 1 but contends that it is further entitled to the excise tax paid

5

on those products. RGI contends that it paid $2.14 in tax per bottle for a total payment of $6,163.20. (Supp. Rapp. Aff. at 3). The issue of excise tax is not raised in the Motion, and Judge Peck did not address the issue. RGI's only support for this claim is a citation to 26 U.S.C. § 5001, which imposes on all distilled spirits produced in or imported into the United States "a tax at the rate of $13.50 on each proof gallon and a proportionate tax at the like rate on all fractional parts of a proof gallon." 26 U.S.C. § 5001(a)(1). According to RGI, each duty-paid defective bottle was 750 ml, or .198129 gallons, at 80 proof, which is equivalent to .1585 proof gallons. (Supp. Rapp. Aff. at 3).[1] RGI has not provided any documentation to show that it actually paid the claimed amount of excise tax. Without evidence of payment, the Court cannot award damages for excise tax paid on the defective bottles in Container 1.

Next, RGI contends that it is entitled to the $2,232 it paid to warehouse the four pallets of duty-paid defective products for forty months, from July 2008 to November 2011. (Supp. Rapp. Aff. at 3). RGI relies on a document entitled "Rate Quotation: Standard Contract Terms and Conditions" that was issued and signed by Central Detroit Warehouse ("CDW") on July 23, 2008, and lists a storage rate of $13.95 per pallet per month. (Supp. Rapp. Aff., Ex. 1). RGI also provides a second "Rate Quotation" document issued by CDW on November 1, 2011. (Supp. Rapp. Aff., Ex. 2). The two documents do not indicate whether RGI accepted the rate quotations and are not signed by RGI. The documents also do not indicate for how long RGI stored the pallets or how many pallets were stored. RGI also submits an "accounting printout" of payments made to CDW during 2011 and explains that RGI does not have records for other years. (Supp. Rapp. Aff. at 3 n.3, Ex. 1-A). The accounting printout is not a bill or receipt and cannot serve as proof of payment. Further, the accounting printout lists a total of $6,157 for the year 2011, and

---

[1] RGI states that one proof gallon is equal to one gallon of alcohol at 100 proof, or fifty percent alcohol by volume. (Supp. Rapp Aff. at 3).

RGI has failed to explain how that number relates to the $2,232 in damages it seeks. RGI has not provided any other documentation to substantiate its warehousing expenses. Without documentation to show proof of payment or how long the duty-paid defective products were warehoused, the Court cannot award damages for warehousing expenses.

In the Objections, RGI claims for the first time that it should recover $432 for the cost of hang tags that were attached to the duty-paid defective products from Container 1. RGI represents that it purchased hang tags, at $.15 each, for each bottle in Container 1 and sent the tags to CBA to be incorporated into the production of the bottles. (Supp. Rapp Aff. at 4). The only evidence RGI provides is a photograph of the hang tags. (Supp. Rapp Aff., Ex. 3). Because RGI has not provided any evidence to substantiate its claim that it purchased the hang tags, RGI is not entitled to any damages for the cost of the hang tags.

RGI also claims for the first time that it is entitled to $800 for the cost of shipping the duty-paid defective products in Container 1. RGI acknowledges that it has no evidence to support this claim. Accordingly, the Court cannot award damages for shipping costs.

In sum, the Court adopts Judge Peck's recommendation that RGI is entitled to damages in the amount of $20,161 with respect to the duty-paid defective products in Container 1.

2. **Damages Related to Container 5**

   a. **Defective Goods from Container 5**

In the Motion, RGI seeks $18,816 in damages related to defective products received in Container 5. Judge Peck recommended that no damages be awarded for Container 5 because RGI failed to provide any evidence regarding the quantity of defective products in Container 5. RGI objects to Judge Peck's conclusion and now seeks $25,347.01 in damages related to Container 5. RGI states that the defect in Container 5 affected 2,016 750 ml bottles and 468 1000 ml bottles,

but RGI does not provide any evidence to substantiate these numbers. (Supp. Rapp. Aff. at 4). Instead, RGI directs the Court to Exhibit 4-D (Supp. Rapp. Aff. at 4-5, Ex. 4-D) and paragraph 56 of the Complaint. RGI states that Exhibit 4-D is an invoice from AMC Logistics Worldwide for transportation and storage costs for Container 5 in the amount of $4,133.62; however, the invoice does not indicate how many bottles in Container 5 were defective. Paragraph 56 of the Complaint simply states that upon receipt of Container 5, RGI "determined that some or all of Products in Container 5, having a value of approximately $18,816.00 were defective." Compl. ¶ 56. Neither Exhibit 4-D nor paragraph 56 of the Complaint provides a basis from which the Court may determine with reasonable certainty the quantity of defective products in Container 5 or the amount of damages that should be awarded in relation to those products. Accordingly, the Court awards no damages for the defective products in Container 5.

### b. Overweight Charges

In the Motion, RGI claims that it is entitled to reimbursement of $5,627 in expenses incurred as a result of Container 5's noncompliance with trans-shipment highway weight regulations. RGI states that because Container 5 was overweight, it had to be separated into two containers and transported by two trucks rather than one. Judge Peck recommended that no damages be awarded because RGI failed to address why the overweight charges are recoverable and failed to provide evidence to substantiate the expenses.

In the Objections, RGI again fails to explain why the overweight expenses are recoverable on a breach of contract claim. RGI also fails to provide evidence to substantiate the $5,627 in overweight charges. RGI states that the overweight charges consisted of $2,587 in "associated charges" and $3,040 in trucking charges. (Supp. Rapp. Aff. at 5). In support of the $2,587 in associated charges, RGI submits three invoices from AMC Logistics Worldwide, totaling $2,587,

which also are attached to the Motion. (Supp. Rapp. Aff. at 5, Ex. 4-A: 1/24/11 $320; Ex. 4-B: 5/27/11 $1,380; Ex. 4-C: 5/27/11 $887). The Court notes that the first invoice, dated January 24, 2011, cannot reflect costs associated with Container 5's weight violation, because RGI alleges that the weight violation was discovered on or about January 30, 2011. (Compl. ¶ 52). As for the other two invoices, RGI does not explain or describe the charges reflected in them. As for the claimed $3,040 in trucking charges, RGI states that invoices cannot be located but that RGI's records reflect a payment of $3,040 for trucking charges related to Container 5. (Supp. Rapp. Aff. at 5). RGI's statement regarding payment and the invoices are insufficient to substantiate RGI's claim for damages based on overweight charges.

Accordingly, the Court finds that damages cannot be awarded for overweight expenses related to Container 5, because RGI has failed to address why the overweight expenses are recoverable and has failed to provide documentation from which the Court could determine the amount of damages with reasonable certainty.

### c. Foregone Discount on Container 6

RGI claims it is entitled to an award of the foregone $18,615 discount it would have received on Container 6 had CBA not breached the contract prior to completion of the Container 6 order. (Rapp. Aff. ¶¶ 17, 24 n.3). RGI represents that it informed CBA in the summer of 2011 that it would order one container of Rose, Ginger and Penja Pepper vodkas. (Supp. Rapp. Aff. at 6). As an incentive for RGI to place a larger order, CBA offered to forego its profit on a second container of the products. (Supp. Rapp. Aff. at 6). RGI claims that the incentive amounted to an $18,615 discount on the containers. (Supp. Rapp. Aff. at 7). Thereafter, RGI purchased two containers of the products, to be delivered in Container 6, for a total price of $37,779.99. (Supp. Rapp. Aff. at 7). CBA never delivered Container 6 nor refunded RGI's payment for Container 6.

RGI claims that it is entitled to the $18,615 discount because CBA never intended to deliver Container 6 or refund RGI's payment for Container 6 and, therefore, never intended for RGI to realize the $18,615 discount. (Supp. Rapp. Aff. at 7). In addition, RGI argues that CBA's actions constitute fraudulent inducement and entitle RGI to treble damages. (Supp. Rapp Aff. at 8).

The Court agrees with Judge Peck's conclusion that while the discounted purchase price would be relevant to a calculation of RGI's lost profits, it is not otherwise a separately and independently compensable measure of damages. (Report at 25 (citing *Semi Conductor Materials, Inc. v. Agric. Inputs Corp.*, No. 96 Civ. 7902, 1998 WL 388503, at *8 (S.D.N.Y. June 23, 1998))). The Court also notes that RGI did not allege fraudulent inducement in relation to the foregone discount on Container 6 in the Complaint. In any event, RGI has not provided evidence sufficient to support an award of the foregone $18,615 discount. Accordingly, RGI is not entitled to damages for the foregone discount on Container 6.

### 3. Container 6 and 1.75 Liter Futura Bottles

RGI does not object with specificity to Judge Peck's recommendation that RGI be awarded $37,779.99 in damages for the deposit it paid on Container 6 (*see* Report at 25-26) and that RGI be awarded no damages in relation to the 1.75 Futura Bottles to be shipped in Container 5 (*see* Report at 26-28). Where a party does not make an objection that is "specific and clearly aimed at particular findings" in a magistrate judge's report, the Court need not conduct de novo review of the magistrate judge's recommendations. *McDonaugh*, 672 F. Supp. 2d at 547 (S.D.N.Y. 2009) ("To invoke de novo review of the magistrate judge's recommendations, a party's objections must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (internal quotation marks omitted)). Finding no clear error on the face of the

record, the Court adopts Judge Peck's recommendations with respect to these claims. RGI is awarded $37,779.99 in damages for the deposit it paid on Container 6.

### 4. Balance of Advanced Payments

In the Motion, RGI claims it is entitled to recover $31,681.07 for the balance of its advance payments to CBA. (Rapp Aff. ¶ 24). Judge Peck recommended that no damages be awarded because RGI failed to substantiate its claim with sufficient documentation. (Report at 28). In the Objections, RGI seeks $30,444.49 for the balance of its advance payments.[2] RGI explains that this figure consists of (a) €7,539.40 remaining from the €85,000 deposit RGI made under the contract and (b) €12,900 remaining from the €31,800 deposit it paid for Container 4. (Supp. Rapp. Aff. at 8-9).

With respect to the first deposit, RGI claims that it submitted an advanced payment of €85,000 to CBA under the terms of the contract and that CBA applied portions of the advanced payment to Container 1 (€33,840), Container 2 (€35,532), Container 4 (€6,288.60) and Container 5 (€1,800). (Supp. Rapp. Aff. at 8-9). RGI claims that CBA applied a total of €77,460.60 of the €85,000 advanced payment toward RGI's orders, leaving a balance of €7,539.40 still due to RGI. (Supp. Rapp. Aff. at 9). As evidence, RGI submits a three-page document it claims was provided by CBA for use as an account statement; however, the document is not dated and does not bear the name or address of CBA or any other company. (Supp. Rapp. Aff. at 8, Ex. 9). The document is a table of figures stating that from the €85,000 advanced payment, €33,840 was applied to Container 1, and €35,532 was applied to Container 2. (Supp. Rapp. Aff., Ex. 9). The document does not indicate how much of the advanced payment was applied to Containers 4 and

---

[2] The amount claimed in the Objections appears to be slightly lower than the amount claimed in the Motion because RGI converts Euros to Dollars using an exchange rate of 1.55 in the Motion but uses an exchange rate of 1.4895 in the Objections. (Supp. Rapp. Aff. at 9 n.8).

5. (Supp. Rapp. Aff., Ex. 9). RGI also submits a "Statement of Balance" dated January 17, 2011, indicating that CBA applied €1,800 of the €85,000 advanced payment to Container 5. (Supp. Rapp. Aff. at 9, Ex. 9-A).

The Court agrees with Judge Peck's conclusion that RGI has sufficiently established that it paid an €85,000 advanced payment to CBA and was entitled to have it applied to future orders. (Rapp. Aff., Ex. G-2). RGI has also established that €1,800 of the advanced payment was applied to Container 5. (Supp. Rapp. Aff. at 9, Ex. 9-A). However, RGI has failed to offer evidence from which the Court could determine how much of €85,000 advanced payment was applied to Containers 1, 2 and 4. Therefore, there is no basis on which to conclude that a €7,539.40 balance remains.

RGI also contends that it submitted a second advanced payment of €31,800 to CBA for the 375 ml bottles in Container 4 on or about May 28, 2009. (Supp. Rapp. Aff. at 9). RGI claims, without providing any documentation in support, that €18,900 of the advanced payment was used to pay for half of the cost of the 375 ml bottles in Container 4. (Supp. Rapp. Aff. at 9). Subtracting €18,900 from €31,800, RGI claims that it is entitled to the balance of €12,900. (Supp. Rapp. Aff. at 9). Because RGI has failed to provide any documentation to support its claim that €12,900 remains of its advanced payment for Container 4, the Court cannot award damages for these expenses.

In sum, the Court finds that RGI has failed to provide sufficient documentation to support any damages for balance of advance payments.

   5. **Lost Profits**

In the Motion, RGI seeks $600,000 in lost profit damages incurred because CBA failed to manufacture and deliver products ordered by RGI in accordance with the contract. (Paltrowitz

Aff. ¶ 12; Rapp Aff. ¶¶ 29-30). Judge Peck concluded that RGI was not entitled to any lost profit damages because RGI's evidence was insufficient to prove its lost profits with reasonable certainty. (Report at 30). In the Objections, RGI revises its claim and seeks at least $265,424.60 in damages for lost profits, consisting of $133,536.60 attributed to Containers 5 and 6 and $131,888.00 in other lost profits. (Supp. Rapp. Aff. at 10-12).

### a. Lost Profits Related to Containers 5 and 6

RGI claims that Containers 5 and 6 were to contain 1,620 cases of 750 ml bottles and that all of the cases in Containers 5 and 6 would have been sold had CBA delivered the containers as promised. (Supp. Rapp. Aff. at 10). RGI claims that its net profit per case was $82.43. (Supp. Rapp. Aff. at 10). On this basis, RGI calculates that the 1,620 cases in Containers 5 and 6 would have generated a net profit of $133,536.60 had they been delivered. (Supp. Rapp. Aff. at 10). In support, RGI submits Exhibit 10, which RGI claims shows that it sold nearly 700 cases of one product across more than 1,600 orders in Michigan from August 2008 through March 2010. (Supp. Rapp. Aff. at 10-11, Ex. 10). RGI does not provide order histories for any other state. (Supp. Rapp. Aff. at 11 n.10).

RGI has not provided documentation to show how many products were in Containers 5 and 6 or to show that RGI's net profit per case was $82.43. In addition, Exhibit 10 does not provide a sufficient basis from which to conclude that all of the products in Containers 5 and 6 would have been sold. Because RGI has not provided sufficient evidence for the Court to determine lost profits from Containers 5 and 6 with reasonable certainty, the Court cannot award the $133,536.60 in lost profit damages that RGI seeks.

### b. Lost Profits Generally

RGI also claims that it is entitled to $131,888 in additional damages for lost profits because (a) RGI has been in continuous operation since February 2006, is a successful supplier, importer and vendor of distilled spirits, and represents a diverse portfolio of brands; (b) RGI's receivables for the first two quarters of fiscal year 2013 were over $186,800.70; (c) in Michigan, RGI sold more than 400 cases per year for more than three years leading up to late 2011, with over 700 accounts and consistent reorders; and (d) it is more than probable that RGI would have continued sales of at least 400 cases per year in Michigan for the years 2011-15, totaling 1,600 cases, if CBA had not breached the contract. (Supp. Rapp. Aff. at 11). RGI calculates that the 1,600 cases it would have sold in Michigan from 2011-15, earning $82.43 net profit per case, would have resulted in a net profit of $131,888 from Michigan alone. (Supp. Rapp. Aff. at 12). As evidence of these lost profits, RGI submits Exhibit 10-A (Supp. Rapp. Aff., Ex. 10-A), which is also attached to the Motion as Exhibit P (Rapp. Aff., Ex. P). Exhibit 10-A is a table listing total gross profits for each quarter from 2009 through 2012, with a calculation of total gross profits for each year. (Supp. Rapp. Aff., Ex. 10-A). RGI claims that Exhibit 10-A shows a strong sales history and a trend of significant growth that would likely have continued had CBA not breached the contract. (Supp. Rapp Aff. at 11 n.11).

Under New York law, a plaintiff may recover lost profits "only if [it] can establish both the existence and amount of such damages with reasonable certainty." *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000). Here, RGI has not provided sufficient evidence to establish lost profits with reasonable certainty. First, RGI has not provided any documentation to support its claim that its net profit per case was $82.43. Second, the only evidence provided in support of RGI's claim of $131,888 in lost profits is a document that lists RGI's gross profits from 2009

14

through 2012, and RGI cannot rely on gross profits alone. (Supp. Rapp Aff., Ex. 10-A); *see Murphy Door Bed Co., Inc. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 103 (2d Cir. 1989) (holding that the district court should have based its assessment of damages on net profits rather than gross profits). Because RGI has not provided sufficient evidence, the Court finds that RGI is not entitled to lost profit damages.

### 6. Promotional Expenses

In the Motion, RGI seeks to recover $55,000 in damages based on its claim that CBA failed to provide promotional assistance in violation of the contract. (Rapp Aff. ¶ 25; Paltrowitz Aff. ¶¶ 10-11). Judge Peck concluded that RGI's submissions were insufficient to award any damages for promotional expenses. (Report at 34-35).

In the Objections, RGI requests $72,738.89 in damages for promotional expenses. (Supp. Rapp Aff. at 12-14). RGI asserts that it spent $145,477 in out-of-pocket promotional expenses, consisting of $129,204 in promotion expenses and $16,273.78 in product samples. (Supp. Rapp Aff. at 12-14). RGI contends that CBA should absorb one-half of the $145,477 in promotional expenses, or $72,738.89, as "reasonable cooperative promotional assistance and support, as is customary in the industry and contemplated and agreed by the parties in their Agreement." (Supp. Rapp Aff. at 14).

RGI does not provide any authority or basis for why CBA should absorb one-half of the cost of promotion assistance, other than RGI's unsupported assertions that the practice is customary in the industry and contemplated in the Agreement. (Supp. Rapp. Aff. at 12-14). Moreover, as Judge Peck noted, RGI has not explained why its calculation of damages for promotional assistance is an appropriate remedy for CBA's breach of contract.

15

RGI also fails to provide documentation sufficient to substantiate the claimed promotional expenses. RGI submits a table listing the vendor, purpose and amount of alleged promotional expenses and attaches to the table (1) invoices for numerous promotional events between 2009 and 2012, (2) a letter from RGI to CBA dated April 15, 2010, describing promotional expenses for a trade event for which CBA failed to deliver products and (3) an email from RGI to CBA dated September 20, 2010, listing additional promotional expenses. (Supp. Rapp. Aff., Ex. 12). The documents do not provide proof that RGI paid all of the alleged expenses and, importantly, the documents do not explain why CBA and not RGI should be responsible for the promotional expenses.

In sum, RGI's submissions do not provide a sufficient basis on which to award damages for promotional expenses. For these reasons, RGI is not entitled to any damages for promotional expenses.

**7. Overcharges for the Purchase of Raw Materials**

In the Motion, RGI seeks $138,348 in damages related to CBA's alleged failure to use its best efforts to obtain raw materials at the lowest possible price as required by paragraph 3(a) of the contract. (Rapp Aff. ¶ 31; Paltrowitz Aff. ¶ 15). Judge Peck found that RGI failed to submit sufficient evidence showing a reasonably certain amount of damages sustained as a result of CBA's alleged failure to obtain raw materials at the lowest possible price.

In the Objections, RGI seeks the reduced amount of $110,678.40, or another amount the Court determines to be appropriate, for overcharges for the purchase of raw materials. RGI asserts that CBA failed to make a good faith effort to obtain raw materials at the lowest price, as it was required to do under the contract. (Supp. Rapp. Aff. at 15, 16 n.20). RGI claims that the products could be produced today—at a time when costs are higher than they were during 2008-

2013, according to RGI—for $3.17 per bottle, which is $1.83 less per bottle than the price CBA charged under the contract. (Supp. Rapp Aff. at 14). RGI states that it ordered 60,480 bottles from CBA. (Supp. Rapp. Aff. at 14). Based on RGI's estimate that it was overcharged by $1.83 per bottle, RGI estimates that RGI was overcharged by at least $110,678.40. (Supp. Rapp Aff. at 15).

RGI has failed to provide a sufficient basis from which the Court could determine an amount of damages based on CBA's alleged overpayment for raw materials. First, RGI provides insufficient support for its claim that the products could be produced today for $3.17 per bottle. According to RGI, the $3.17 figure consists of $1.00 per bottle for contract packing and bottling (Supp. Rapp Aff. at 14), $1.58 for decorated bottles and cartons (Rapp Aff. 31, n.5, Ex. Q-3), $0.15 for corks (Rapp Aff. 31, n.6, Ex. Q-1) and $0.44 for vodka (Rapp Aff. 31, n.7, Ex. Q-2). To substantiate the $1.00 per bottle charge, RGI states that $1.00 per bottle is the industry standard charge for contract packing and bottling distilled spirits. (Supp. Rapp Aff. at 14). RGI states that its own survey of leading bottlers revealed that charges for contract bottling vary from $9.75 to $13.50 per case and have not been more expensive in the past. (Supp. Rapp Aff. at 14 n.15). The only evidence RGI provides is a price list for one bottling company, Strong Sprits, Inc., from the first quarter of 2012. (Supp. Rapp. Aff., Ex. 13-D). RGI's informal survey of leading bottlers and its submission of a price list for one bottling company is insufficient to substantiate RGI's claim that the industry standard charge for contract packing and bottling is $1.00 per bottle.

RGI's submissions in support of the cost of bottles and cartons, corks and vodka similarly are insufficient. RGI provides a price quote for bottles dated August 10, 2011 (Rapp Aff. 31, n.5, Ex. Q-3), a price quote for corks dated May 10, 2012 (Rapp Aff. 31, n.6, Ex. Q-1), and a price

quote for vodka, dated February 14, 2013 (Rapp Aff. 31, n.7, Ex. Q-2). These price quotes are insufficient for determining an amount of damages based on CBA's alleged overpayment for raw materials. As Judge Peck noted, RGI (1) does not offer evidence to show that these quotes are representative of the price of these raw materials at the time they were purchased by CBA; (2) does not provide evidence to show that the price quotes are for the appropriate quality of raw materials as required under the contract; and (3) fails to explain how the price quotes would compare to the CBA's prices, such as how the cost of shipping would affect the quoted prices. RGI acknowledges that the price quotes are only its "best estimate" as to the price of raw materials when CBA purchased them. (Supp. Rapp Aff. at 15).

Because RGI has failed to substantiate its claim for damages as a result of CBA's alleged failure to obtain raw materials at the lowest price, the Court finds that no damages may be awarded for this claim.

**B. Interest, Attorneys' Fees and Costs**

RGI does not object with specificity to Judge Peck's recommendations with respect to interest, attorneys' fees and costs. Where a party does not make an objection that is "specific and clearly aimed at particular findings" in a magistrate judge's report, de novo review is not invoked. *McDonaugh*, 672 F. Supp. 2d at 547. Finding no clear error on the face of the record, the Court adopts Judge Peck's recommendations, awarding RGI $1,216 in costs, awarding no attorneys' fees and awarding pre-judgment interest through the date of April 18, 2013, in the amount of $6,000 plus $14.287 for each day since the Report was entered (April 18, 2013), and post-judgment interest pursuant to 28 U.S.C. § 1961. *See DiPilato*, 662 F. Supp. 2d at 339 (noting that when no objections are made, the Court may adopt the magistrate judge's report if there is no clear error on the face of the record). As for pre-judgment interest since the Report was entered,

the Court determines that $14.287 for each of the 127 days since April 18, 2013, amounts to $1,814.45 in pre-judgment interest for the time period between April 18, 2013, and August 23, 2013.

## III. CONCLUSION

The Court has reviewed the portions of Magistrate Judge Peck's thorough and well-reasoned Report to which no objections were made and finds no clear error on the face of the record.

For the reasons stated above, the Court adopts Magistrate Judge Peck's Report in its entirety. Accordingly, the Motion (Dkt. No. 32) is GRANTED as modified herein, judgment is entered for RGI against CBA on default and CBA's counterclaims are hereby DISMISSED with prejudice. RGI is awarded (a) breach-of-contract damages in the amount of $57,940; (2) $6,000 in pre-judgment interest through the date of April 18, 2013; (3) $1,814.45 in pre-judgment interest for the period between April 18, 2013, and August 23, 2013; (4) post-judgment interest pursuant to 28 U.S.C. § 1961; and (5) costs in the amount of $1,216.

The Clerk is directed to close the motion at docket number 32.

SO ORDERED.

Dated: August 23, 2013
        New York, New York

*[signature]*
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE